UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WANDA KYLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 13-0750 (ESH) |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Wanda Kyler seeks judicial review pursuant to 42 U.S.C. § 405(g) of the denial of social security disability insurance benefits ("DIB") on November 2, 2012, following a hearing before an Administrative Law Judge ("ALJ"). Pending before the Court are Plaintiff's Motion for Reversal of Judgment (Dkt. # 18) and the Social Security Commissioner's Motion for Judgment of Affirmance (Dkt. # 21). Upon consideration of the parties' submissions and the Administrative Record ("AR") (Dkt. # 20), the Court will grant plaintiff's motion, deny defendant's motion, and remand the case to the agency for further proceedings.

**BACKGROUND**

At the relevant time period, plaintiff was a 56-year-old woman who resided in Pineville, South Carolina, and performed clerical duties as an employee of the county school system from 1996 to 2004. (AR 28, 37, 186.) On November 29, 2011, plaintiff protectively filed an application for DIB, alleging that she became unable to work due to a disabling condition on September 1, 2004. (AR 13, 122.) During a hearing on October 5, 2012, in Charleston, South Carolina, plaintiff amended her claim to reflect the disability date as December 28, 2008, when

1

she was diagnosed with sarcoidosis. (AR 42.) In her DIB application, plaintiff listed thirteen disabling conditions, which included chronic asthma, arthritis, high blood pressure, acid reflux, allergy, carpal tunnel, tiredness, shortness of breath, continuing cough, and hoarseness. In addition, she listed "ears . . . spit a great deal," and the fact that she wore a knee brace on both knees. (AR 143.) Plaintiff's claim was denied initially and on reconsideration. (AR 52, 60-64.) Her request for a hearing was granted.

Plaintiff was represented by counsel at the October 5, 2012 hearing where she testified and presented one witness whom she had known for approximately two years and had visited with once a week. (AR 25-51.) The ALJ also considered a letter submitted on plaintiff's behalf by Dr. Adebola E. Rojugbokan of the Franklin C. Fetter Cross Family Health Center ("Cross Health Center") who wrote on October 4, 2012, that she began treating plaintiff on December 9, "2009." (AR 390.)[1] Dr. Rojugbokan wrote that plaintiff "suffers from severe sarcoidosis/ asthma," and opined that plaintiff's condition "causes her to be unable to perform her activities of daily living." (*Id*.) Dr. Rojugbokan further stated that plaintiff "says she has been unable to perform any work activities. Disability would have commenced January 2009 to present." (*Id*.) Dr. Rojugbokan offered to provide further assistance and additional information if needed.

The ALJ denied plaintiff's claim by written decision dated November 2, 2012. (AR 13-20.) The ALJ found in relevant part that plaintiff (1) had not engaged in substantial gainful activity during the relevant time period between December 28, 2008 and December 31, 2009, (2) had "severe impairments" of obesity, asthma, and sarcoidosis, (3) "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1," (4) "had the residual functional

---

[1] As discussed later, the parties now agree that the year was a typographical error and that Dr. Rojugbokan had treated plaintiff since December 2008 and perhaps earlier.

capacity ["RFC"] to perform sedentary work as defined in 20 CFR 404.1567(a) except no climbing, no exposure to hazards, no exposure to temperature extremes, or pollen," (5) was capable of "performing past relevant work as a school administrator," which "did not require the performance of work-related activities precluded by" plaintiff's RFC, and (6) was not disabled under the Social Security Act at the relevant time period. (AR 15-16.)

The Appeals Council affirmed the ALJ's decision on March 12, 2013, finding, among other things, that the new medical records plaintiff had presented dated from November 20, 2012, did not cover the time period underlying the ALJ's decision (through December 31, 2009) (AR 2-3.) Plaintiff, now residing in the District of Columbia, timely filed this civil action on May 1, 2013. *See* Dec. 17, 2013 Order (Dkt. # 11).

## ANALYSIS

### I. LEGAL STANDARD

A district court is limited in its review of the SSA's findings to a determination whether those findings are based on substantial evidence. 42 U.S.C. § 405(g); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004); *Poulin v. Bowen*, 817 F.2d 865, 870 (D.C. Cir. 1987). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The test 'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.' " *Butler*, 353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. Federal Energy Regulatory Comm'n*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)); *see Turner v. Astrue*, 710 F.Supp.2d 95, 104-05 (D.D.C. 2010).

In order to qualify for disability benefits, an individual must prove that she has a disability that renders her unable "to engage in any substantial gainful activity by reason of any

3

medically determinable physical or mental impairment" for a period of "not less than 12 months." 42 U.S.C. § 423(a)(1), (d)(1)(A). The claimant must support her claim of impairment with "[o]bjective medical evidence" that is "established by medically acceptable clinical or laboratory diagnostic techniques." *Id*. § 423(d)(5)(A). In addition, the impairment must be severe enough to prevent the claimant from doing her previous work and work consummate with her age, education, and work experience that exists in the national economy. *Id*. § 423(d)(2)(A).

The SSA sets out a five-step evaluation process to determine whether a claimant is disabled so as to qualify for benefits. A clear determination of disability or non-disability at any step is definitive, and the process ends at that step. *Id*. § 404.1520(a)(4). In the first step, a claimant is disqualified if she is currently engaged in "substantive gainful activity." *Id*. § 404.1520(a)(4)(i). In the second step, a claimant is disqualified if she does not have a "severe medically determinable physical or mental impairment" that is proven "by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 404.1520(a)(4)(ii). In the third step, a claimant qualifies for benefits if her impairment(s) meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4)(iii). Between the third and fourth step, the SSA uses the entire record to make a determination of the claimant's RFC, which is "the most [the claimant] can still do despite [the] limitations" caused by the impairment. *Id*. §§ 401.1520(a)(4), 404.1545(a)(1). In the fourth step, a claimant is disqualified if her RFC shows that she is still able to do her past relevant work. *Id*. §§ 404.1520(a)(4)(v), 404.1545(a)(5)(ii). In the fifth step, a claimant is disqualified if her RFC shows that she is capable of adapting to "other work that exists in the national economy." *Id*. §§ 404.1520(a)(4)(v), 404.1545(a)(5)(ii). If the claim survives these steps, the claimant is then determined to be disabled and qualifies for

benefits. *Id*. § 404.1520(a)(4)(v). In this case, the ALJ disqualified plaintiff at steps three through five.

## II. THE ALJ'S DECISION

The ALJ found that plaintiff's medical records failed to "reveal that her severe impairments are disabling [but gave plaintiff] the benefit of the doubt that these conditions do impose some limitations." (AR 19.) The ALJ found that the evidence of plaintiff's obesity, asthma, and sarcoidosis "supports a finding that [plaintiff's] severe impairments limit her to sedentary work," further limited by lifting and carrying of "up to 10 pounds occasionally; never climb, must avoid exposure to hazards and avoid exposure to temperature extremes and pollen." (AR 19.) The ALJ determined that notwithstanding her limitations, plaintiff could perform her past relevant work "as a school administrator." (AR 20.)

The ALJ accorded "little weight" to Dr. Rojugbokan's opinion set out in the October 4 2012 letter because it contained no treatment notes "for the relevant time period" and the clinic's treatment notes "indicate that [plaintiff] was treated in January 2010 for a yearly [unrelated] examination[,] . . . in February 2010 for an earache and headache[,] [and] in May 2010 . . . for a routine checkup . . . ." (AR 19.) The ALJ concluded as to Dr. Rojugbokan that "[t]he medical evidence does not support a finding that [the doctor] treated the claimant for disabling medical conditions prior to, or in the immediate time following, the date last insured (December 31, 2009). (*Id*.) But defendant has since agreed with plaintiff's assertion that the ALJ erred and that Dr. Rojugbokan had indeed treated plaintiff at the clinic for asthma and coughs during the relevant time period. *See* Pl.'s Mem. at 38; Def.'s Mem. of P. & A. [Dkt. # 22] at 16.

The ALJ accorded "limited weight" to Myers' testimony about plaintiff's impairments and limitations because Myers testified at the 2012 hearing that she had known plaintiff for two

5

years "and therefore was not an acquaintance . . . during the relevant time period and is therefore an inappropriate historian for the claimant's condition at that time." (AR 19.)

The ALJ accorded "significant weight" to the "State Agency medical consultants who provided mental [RFC] assessments . . . insomuch as they are consistent with the medical evidence of record and support the ultimate finding of 'not disabled' " (*Id*.). The ALJ, however, assigned plaintiff "a more restrictive [RFC] because the evidence received at the hearing level shows that the claimant is more limited than [the consultants had] determined." (*Id*.)

### III. PLAINTIFF'S ARGUMENT FOR REVERSAL

Plaintiff contends that remand is warranted because the ALJ "omit[s] . . . material evidence of disability and required regulatory analysis." Pl.'s Mem. of P. & A. [Dkt. # 18, ECF pp. 8-40] at 14. She argues first that the ALJ's finding that her asthma attacks failed to qualify as an "automatic disability, under Listing 3.03, is factually inaccurate" and "so profound [of an error] that it requires reversal and remand solely for the purpose of awarding the benefits to which the [p]laintiff was entitled years ago." *Id*. at 16. Plaintiff relies upon the following regulation governing asthma attacks:

> Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. § 404.1, Subpt. P, App. 1., Listing 3.03B. And she has listed six episodes that she contends satisfy the foregoing criteria. (Pl.'s Statement of Facts Supporting Mot. for Reversal of J. at 5-6.)

In addition, plaintiff argues that the ALJ failed to consider whether all of her listed impairments were severe, Pl.'s Mem. at 19-21, failed to develop the record by ordering

6

consultative examinations, *id*. at 21-25, failed to consider favorable evidence of additional limitations that could have significantly reduced plaintiff's RFC, *id*. at 25-28, erroneously found that plaintiff could perform her past relevant work requiring light exertion while also finding that her RFC was limited to a restricted range of sedentary work, *id*. at 28-30, and failed to assess the treating physician's opinion in accordance with the law and the facts, *id*. at 37-39. In addition, plaintiff argues that the ALJ's "credibility analysis is [][ factually and legally flawed." *Id*. at 30-37.

## IV. DEFENDANT'S ARGUMENT FOR AFFIRMANCE

Defendant contends that the ALJ's decision is substantially supported by the evidence but her arguments for the most part are no more than an attempt to rationalize a flawed administrative decision. *See Espinosa v. Colvin*, 953 F. Supp. 2d 25, 32 (D.D.C. 2013) (noting that "the Court may only consider the grounds proffered by the agency in its decision for *post hoc* rationalizations do not suffice") (citation omitted). As to plaintiff's first argument in particular, defendant counters that the ALJ properly determined that plaintiff's asthma attacks did not qualify as an automatic disability because she failed to satisfy "the regulatory definition" of an asthma attack for all but perhaps her hospitalization from December 31, 2008 to January 3, 2009 (constituting two attacks). Def.'s Mem. of P.&A. [Dkt. # 22] at 7. But the ALJ's step-three finding focuses mostly on plaintiff's obesity and only mentions "asthma attacks." (*See* AR 15-16.) There is no discussion in the decision about the regulatory definition of an asthma attack and its application to plaintiff's evidence of asthma treatments. Consequently, the Court cannot determine if this evidence was reasonably rejected or "simply ignored." *Butler*, 353 F.3d at 1002 ("The judiciary can scarcely perform its assigned review function, limited thought it is, without

some indication not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored.") (citation and internal quotation marks omitted).

Similarly, the ALJ purportedly considered "the combined effects of claimant's impairments, both severe and non-severe" but then concluded that "[t]here is no indicat[ion] the claimant's *obesity* contributed significantly to her breathing difficulties, caused musculoskeletal problems, or resulted in cardiovascular disease." (AR 16) (emphasis added). The ALJ did not address most of plaintiff's other disabling impairments, particularly her sarcoidosis, arthritis (and need for knee braces), high blood pressure, and carpal tunnel syndrome; thus, the Court cannot ascertain from the decision if plaintiff's evidence on those impairments was reasonably rejected or improperly ignored. In sum, the ALJ concludes at step three that plaintiff's impairments were "not at least equal in severity to those described in Listing 3.03" (AR at 16) without citing the evidence that led to this conclusion and explaining why plaintiff's evidence about certain impairments was not credited. (*See* Pl.'s Mem. at 17-18.)

In addition, unlike defendant, the Court does not consider the ALJ's now-admittedly erroneous statement with regard to the timing of Dr. Rojugbokan's treatment of plaintiff's disabling conditions to be a "minor error." Def.'s Mem. at 16. It is reasonably safe to assume that this error figured prominently in the ALJ's decision to accord "little weight" to the opinion of Dr. Rojugbokan as plaintiff's treating physician at the Cross Health Center. Plaintiff testified that on nearly a monthly basis between January 2009 and December 2009, she was treated at the clinic because she could not breathe, and for "body ache; heart beating fast; I feel like I'm dying; kept coughing and spitting. The cough wouldn't stop – uncontrollable cough, and that's not normal." (Hr'g Tr. [Dkt. # 20-2] at 34-35.) "Pursuant to this Circuit's 'treating physician rule,' a treating physician's report is binding on the fact-finder unless contradicted by substantial

evidence." *Espinosa*, 953 F. Supp. 2d at 32 (quoting *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004)) (internal quotation marks and citations omitted). A remand is necessary for the ALJ to reconsider Dr. Rojugbokan's opinion in light of the foregoing correction.

Since the remand will require reconsideration of the ALJ's step three determination, the Court will not address in any detail the ALJ's findings under steps four and five. Should the ALJ again reach steps four and five, the Court finds the conclusion that plaintiff could perform her past relevant work as a school administrator (AR 20) arbitrary in the absence of any findings as to what such work entailed. In addition, the ALJ should clarify to what extent, if any, plaintiff's impairments beyond those related to her obesity were considered in evaluating her RFC.

For the foregoing reasons, the Court agrees that the case should be remanded, albeit for further proceedings since the Court does not find the evidence in the record to be "clearly indicative of disability." *Espinosa*, 953 F. Supp. 2d at 35-36. Accordingly, it is

**ORDERED** that Plaintiff's Motion for Reversal of Judgment [Dkt. # 18] is **GRANTED**; it is further

**ORDERED** that Defendant's Motion for Judgment of Affirmance [Dkt. # 21] is **DENIED**; it is further

**ORDERED** that this case is **REMANDED** to the Social Security Commissioner for further proceedings.

_____/s/_____
ELLEN SEGAL HUVELLE
Date: May 30, 2014    United States District Judge